UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DOMINIC ESCALERA, | : | CIVIL NO: 1:15-CV-02132 |
| | : | |
| Plaintiff | : | |
| | : | (Chief Judge Conner) |
| v. | : | |
| | : | (Magistrate Judge Schwab) |
| WARDEN LAUREL HARRY, *et al.,* | : | |
| | : | |
| Defendants | : | |
| | : | |

## REPORT AND RECOMMENDATION

## I. Introduction.

The plaintiff, Dominic Escalera, a state prisoner proceeding *pro se*, asserts constitutional claims against numerous prison officials. The defendants have moved to dismiss Escalera's amended complaint pursuant to Fed.R.Civ.P. 12(b)(6) arguing that Escalera failed to exhaust administrative remedies. The failure to exhaust available administrative remedies is an affirmative defense, and because it is not clear from the face of the amended complaint or from documents that the Court may properly consider in connection with a 12(b)(6) motion to dismiss that Escalera failed to exhaust available administrative remedies, we recommend that the defendants' motion to dismiss be denied.

## II. Background and Procedural History.

In November of 2015, Escalera began this action by filing a complaint and an application for leave to proceed *in forma pauperis*.  We granted Escalera's application for leave to proceed *in forma pauperis,* and we ordered the Clerk of Court to serve the complaint on the defendants.  We later denied Escalera's motion for the appointment of counsel and entered a case management order.  Ten of the defendants then filed a motion to dismiss the complaint.  After Escalera moved for leave to file an amended complaint, the defendants concurred in that motion and they withdrew their motion to dismiss the original complaint.  We granted Escalera leave to file an amended complaint, and his amended complaint was filed on May 18, 2016.

Although Escalera is currently incarcerated at the State Correctional Institution at Somerset, his claims concerns events that happened while he was incarcerated at the State Correctional Institution at Camp Hill (SCI-Camp Hill) and conditions at SCI-Camp Hill.  The defendants are the following officials and employees at SCI-Camp Hill: (1) Superintendent Harry; (2) Lieutenant Becker; (3) Lieutenant Kuzar; (4) Sergeant Swift; (5) Sergeant Cleaver; (6) Corrections Officer Killeen; (7) Corrections Officer Brown;  (8) Corrections Officer Nordozzi; (9) Sergeant Weis; (10) Sergeant John Doe; and (11) Corrections Officer Flecher;

2

as well as (12) James Barnacle, the Director of the Pennsylvania Department of Corrections' Office of Special Investigations and Intelligence.[1]

Escalera alleges that in January of 2015, Flecher and Doe used excessive force against him, and he was placed in the Restricted Housing Unit (RHU) at SCI-Camp Hill, where Kuzar, Swift, Cleaver, Weis, Killeen, Brown, and Nordozzi targeted him. He alleges that Nordozzi and Brown issued him a false misconduct resulting in him receiving additional time in the RHU and loss of water in his cell for seven days. He complained to Weis, who knew that the misconduct was false but nevertheless supported Nordozzi and Brown.

While Escalera was under the water restriction, Brown withheld Escalera's mail so that Escalera could not report Brown's actions. After seven days, Cleaver supervised a search of Escalera's cell during which officers confiscated Escalera's pen and spoon. According to Escalera, this was done in an attempt to starve him and to keep him from contacting family, friends, and the Prison Society about the abuse he was suffering.

After two days of not being able to eat or write, Escalera refused to turn in his tray. In response to Killeen telling Escalera that "they [would] fuck [him] up," Escalera broke his tray to arm himself from further staff assaults. Mental health

---

[1] Although the amended complaint does not list the defendants, by an Order dated May 18, 2016, we construed the amended complaint as naming the same defendants as named in the original complaint, which are the above-listed defendants.

staff was contacted to resolve the situation, and Escalera explained what had been going on and voiced his belief that the officers were harassing him as punishment because they believed he had assaulted staff. Escalera was moved to a different cell, where, he alleges, the real abuse started.

Escalera alleges that he was stripped of all property—he had no mattress, sheets, etc. According to Escalera, it was in the middle of winter, but the window was left open and there was a fan blowing. He alleges that he was forced to sleep on a cold, bare metal frame for five days, and he shivered uncontrollably.

Intending to cause Escalera emotional distress, Kuzar, Cleaver, Swift, and Killeen allegedly made "false 17x statements" and refused to give him his property. Escalera alleges that Weis upheld the false statements of the other officers knowing them to be untrue, and Brown continued to tamper with his outgoing and incoming mail by refusing him paperwork and delaying his grievance and appeal responses. Escalera alleges that he was in the RHU for over 30 days, and Kuzar, Cleaver, Swift, Killeen, Weis, Brown, and Nordozzi refused him showers, cleaning supplies, and regular sheet changes, which resulted in Escalera contracting Tinea three times.

Escalera wrote numerous request slips to Becker, who was investigating the alleged assault on Escalera by defendants Doe and Flecher. He asked Becker to contact witnesses Noral Taylor and Luis Andujar, but Becker did not contact the

witnesses until after Escalera wrote to Barnacle.  When Becker finally contacted the witnesses, he attempted to bribe them and force them to lie.  Noral Taylor told Escalera that "they are playing dirty," and he gave Escalera a handwritten statement about what he had seen.  A short time later, Becker closed the investigation, finding in favor of Flecher and Doe.  According to Escalera, Becker did everything he could to hinder the investigation, and Barnacle was aware of Becker's misdeeds because Escalera wrote to him about Becker closing the investigation without contacting the rest of the witnesses and purportedly without following policy.  Escalera alleges that although his correspondence to Barnacle regarding Becker's attempt to bribe witnesses should have raised concerns about the integrity and thoroughness of Becker's investigation, Barnacle nevertheless closed the investigation and refused to follow procedure, thereby allowing corruption to go unchecked.  Barnacle also allegedly lied to Escalera's family.  He told Escalera's sister that no witnesses had come forward, and he told Escalera's mother that Escalera had a history of mental illness even though he has no record of mental illness.

According to Escalera, through numerous grievances that have been filed by prisoners over the years, Superintendent Harry was aware of the unsanitary conditions in the RHU.  Escalera alleges that Harry denied all grievances regarding sanitary conditions in the RHU, and she allowed Kuzar, Cleaver, Swift, Weis,

Killeen, Brown, and Nordozzi to go unchecked, and as a result, MRSA, Scabies, and Tinea ran rampant throughout the RHU.

Escalera is seeking declaratory and injunctive relief as well as compensatory and punitive damages.

The defendants[2] moved to stay discovery pending the disposition of a motion to dismiss the amended complaint that they anticipated filing in the future. Given that no motion to dismiss was then pending and we, thus, could not determine whether any such motion would be groundless or whether granting the motion would eliminate all claims such that discovery would be futile, we denied the motion to stay discovery because the defendants had not shown good cause for such a stay. Escalera continued to seek discovery. The defendants requested an extension of time to respond to Escalera's discovery requests asserting that they anticipated filing a motion to dismiss the amended complaint based on Escalera's purported failure to exhaust administrative remedies and that they intended to renew their motion to stay discovery after they filed that motion to dismiss. They requested an extension of time until July 29, 2016, to respond Escalera's discovery requests. We granted that motion and ordered the defendants to respond to Escalera's discovery requests on or before July 29, 2016. After we had already granted the defendants' motion for an extension of time, Escalera filed a brief in

---

[2]  When we refer to the defendants, we are referring to all the defendants except Sergeant John Doe, who has not been identified or served in this case.

opposition to that motion.   He also filed several motions for leave to depose inmate witnesses by written questions, which we denied because Escalera had not shown that he was able to comply with the requirements of Fed.R.Civ.P. 31 regarding depositions by written questions.

On July 26, 2016, the defendants filed a motion to dismiss the amended complaint pursuant to Fed.R.Civ.P. 12(b)(6), and the next day, they filed another motion to stay discovery.  On August 9, 2016, the defendants filed a brief in support of their motion to stay discovery and a brief and documents in support of their motion to dismiss the amended complaint.   On August 18, 2016, Escalera filed a brief in opposition the defendants' motion to dismiss his amended complaint.[3]

The defendants filed a motion to strike Escalera's brief in opposition.  By a separate Order, we denied the defendants' motion to strike and we granted in part and denied in part their second motion to stay discovery.  We stayed discovery on the merits and ordered that all discovery on the issue of exhaustion of administrative remedies be completed within 60 days.

---

[3] Escalera actually filed what he titled as a motion in opposition to the defendants' motion to dismiss and a brief in support of his motion in opposition.  The Clerk of Court docketed both of those documents as Escalera's brief in opposition to the defendants' motion to dismiss.  We also construe those documents as Escalera's brief in opposition to the motion to dismiss.

In this Report and Recommendation, we address the defendants' motion to dismiss the amended complaint, and we recommend that the Court deny that motion.

## III.  Motion to Dismiss and Pleading Standards.

In accordance with Fed.R.Civ.P. 12(b)(6), the court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  When reviewing a motion to dismiss, "[w]e must accept all factual allegations in the complaint as true, construe the complaint in the light favorable to the plaintiff, and ultimately determine whether plaintiff may be entitled to relief under any reasonable reading of the complaint." *Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010).  "A Rule 12(b)(6) motion tests the sufficiency of the complaint against the pleading requirements of Rule 8(a)." *I.H. ex rel. D.S. v. Cumberland Valley Sch. Dist.*, 842 F. Supp. 2d 762, 769-70 (M.D. Pa. 2012).  "Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 677-78 (2009).  The statement required by Rule 8(a)(2) must give the defendant fair notice of what the plaintiff's claim is and of the grounds upon which it rests. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007).  In deciding a 12(b)(6) motion to dismiss, we "consider only the complaint, exhibits attached to the complaint, matters of public

8

record, as well as undisputedly authentic documents if the [plaintiff's] claims are based upon these documents." *Mayer*, 605 F.3d at 230.

## IV. Discussion.

### A. The Exhaustion Requirement.

The defendants contend that the Court should dismiss the amended complaint because Escalera failed to exhaust administrative remedies.  The Prison Litigation Reform Act requires a prisoner to exhaust available administrative remedies prior to filing an action challenging prison conditions.  The Act provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. §1997e(a).  "Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." *Jones v. Bock*, 549 U.S. 199, 204 (2007).  "This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record." *Id.*  Thus, the benefits of the exhaustion requirement "include allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Id.* at 219.

In accordance with § 1997e(a), the exhaustion of available administrative remedies is mandatory, *Booth v. Churner*, 532 U.S. 731, 739 (2001), and the "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). A prisoner must "exhaust all available administrative remedies" regardless of whether the administrative process may provide the prisoner with the relief that he is seeking. *Nyhuis v. Reno*, 204 F.3d 65, 75 (3d Cir. 2000). "[C]ompliance with the administrative remedy scheme will be satisfactory if it is substantial." *Id.* at 77.

42 U.S.C. § 1997e(a) requires proper exhaustion. *Woodford v. Ngo,* 548 U.S. 81 (2006). In other words, it requires more than simple exhaustion, i.e., more than that there is no further process available to the prisoner within the grievance system. *Spruill v. Gillis*, 372 F.3d 218, 227-31 (3d Cir. 2004). Section 1997e(a) requires that a prisoner follow the procedural requirements set forth in the administrative remedy process that is available to him. *Id.* at 231. The prison grievance procedures supply the yardstick for measuring whether exhaustion was proper. *Id. See also Jones,* 549 U.S. at 218 ("The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.").

10

"The only limit to § 1997e(a)'s mandate is the one baked into its text: An inmate need exhaust only such administrative remedies as are 'available.'" *Ross v. Blake*, 136 S. Ct. 1850, 1862 (2016) (quoting S1997e(a)).  In other words, "the exhaustion requirement hinges on the 'availab[ility]' of administrative remedies: An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones." *Id.* at 1858.  "[T]he ordinary meaning of the word 'available' is 'capable of use for the accomplishment of a purpose,' and that which 'is accessible or may be obtained.' " *Id*. (quoting *Booth v. Churner*, 532 U.S. 731, 737-738 (2001) (internal citations and quotation marks omitted)).  "Accordingly, an inmate is required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Id.* at 1858–59.

"Under the PLRA, exhaustion is a precondition for bringing suit under § 1983." *Small v. Camden Cnty.*, 728 F.3d 265, 269 (3d Cir. 2013).  It is a "'threshold issue that *courts* must address to determine whether litigation is being conducted in the right forum at the right time.'" *Id.* at 270 (emphasis in original) (quoting *Dillon v. Rogers*, 596 F.3d 260, 272 (5th Cir. 2010)).  There is no right to have a jury decide the issue of exhaustion. *Id.* at 271.  Rather, "exhaustion is a question of law to be determined by a judge, even if that determination requires the resolution of disputed facts." *Id.* at 269.

## B.  Failure to Exhaust Raised in a Fed.R.Civ.P. 12(b)(6) Motion to Dismiss.

Failure to exhaust available administrative remedies is an affirmative defense. *Jones v. Bock,* 549 U.S. 199, 216 (2007).  As such, the defendant has the burden of pleading and proving that the prisoner failed to exhaust available administrative remedies. *Brown v. Croak*, 312 F.3d 109, 111 (3d Cir. 2002).

A court can dismiss a complaint under Fed.R.Civ.P. 12(b)(6) based on an affirmative defense if it is clear from the face of the complaint that the complaint is barred by the affirmative defense.  For example, the United States Court of Appeals for the Third Circuit has long held that a court can dismiss a complaint based on the statute of limitations, which is an affirmative defense, when "the complaint facially shows noncompliance with the limitations period and the affirmative defense clearly appears on the face of the pleading." *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 n.1 (3d Cir.1994).  But "'[i]f the bar is not apparent on the face of the complaint, then it may not afford the basis for a dismissal of the complaint under Rule 12(b)(6)." *Schmidt v. Skolas,* 770 F.3d 241, 249 (3d Cir. 2014) (quoting *Robinson v. Johnson*, 313 F.3d 128, 135 (3d Cir. 2002) (quoting *Bethel v. Jendoco Constr. Corp.*, 570 F.2d 1168, 1174 (3d Cir. 1978)).  And "a plaintiff is not required to plead, in a complaint, facts sufficient to overcome an affirmative defense." *Schmidt*, 770 F.3d at 251.  "Thus, if 'the pleading does not reveal when the limitations period began to run,' then 'the

statute of limitations cannot justify Rule 12 dismissal.'" *Stephens v. Clash*, 796 F.3d 281, 288 (3d Cir. 2015) (quoting *Barefoot Architect, Inc. v. Bunge,* 632 F.3d 822, 835 (3d Cir. 2011)).

Like the statute of limitations, the failure to exhaust available administrative remedies is an affirmative defense. *McPherson v. United States*, 392 F. App'x 938, 943 (3d Cir. 2010) ("Failure to exhaust and the statute of limitations are similar 'in the abstract': they are both affirmative defenses."). And as with the statute of limitations, dismissal under Fed.R.Civ.P. 12(b)(6) based on the failure to exhaust is appropriate only if it is apparent from the complaint that the plaintiff failed to exhaust available administrative remedies. *Thomas v. Brinich*, 579 F. App'x 60, 62 (3d Cir. 2014) ("While the failure to exhaust administrative remedies may form a basis for a dismissal for failure to state a claim, dismissal on that ground is appropriate only in those circumstances where the complaint reveals the exhaustion defense on its face."); *Jones,* 549 U.S. at 215-216 (holding that a prisoner's failure to exhaust available administrative remedies is an affirmative defense, but noting that "that is not to say that failure to exhaust cannot be a basis for dismissal for failure to state a claim" and that "[w]hether a particular ground for opposing a claim may be the basis for dismissal for failure to state a claim depends on whether the allegations in the complaint suffice to establish that ground, not on the nature of the ground in the abstract"). Because a 12(b)(6)

motion raising failure to exhaust is appropriate only in cases where the complaint shows that the prisoner has failed to exhaust available administrative remedies and the prisoner is not required to plead or prove exhaustion, cases in which the failure to exhaust is appropriately raised on a motion to dismiss will be rare. *See Albino v. Baca*, 747 F.3d 1162, 1169 (9th Cir. 2014) (concluding that "in those rare cases where a failure to exhaust is clear from the face of the complaint, a defendant may successfully move to dismiss under Rule 12(b)(6) for failure to state a claim"); *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007) (stating that "only in rare cases will a district court be able to conclude from the face of the complaint that a prisoner has not exhausted his administrative remedies and that he is without a valid excuse"); *Cf. Am. Chiropractic Ass'n v. Am. Specialty Health Inc.*, 625 F. App'x 169, 173 n.5 (3d Cir. 2015) (noting in a case under the Employee Retirement Income Security Act of 1974 that "[b]ecause the exhaustion defense often requires consideration of materials outside the pleadings and is thus typically resolved on summary judgment, . . .it is not generally the basis for dismissal under Rule 12(b)(6)").

**C.  It Is Not Clear From the Amended Complaint and the Documents that the Court Can Consider in Connection with a 12(b)(6) Motion that Escalera Failed to Exhaust Available Administrative Remedies.**

In this case, it is not clear from Escalera's amended complaint that he failed to exhaust available administrative remedies.  Escalera mentions requests slips and correspondence in his amended complaint, but his only specific mention of grievances in his amended complaint are his allegations that Brown tampered with his outgoing and incoming mail by refusing him paperwork and delaying his grievance and appeal responses and that Superintendent Harry was aware of the unsanitary conditions in the RHU because over the years inmates have filed numerous grievances, all of which she denied.  Escalera also alleges that Brown withheld Escalera's mail so that he could not report his actions and that, at one point, he was unable to contact people outside the institution because his pen was confiscated.  From these allegations, we cannot conclude as a matter of law that Escalera failed to exhaust available administrative remedies.

In support of their argument that Escalera failed to exhaust available administrative remedies, the defendants attach to their brief  several unsworn declarations; copies of various versions of several different Department of Corrections (Doc) policies; copies of three grievances filed by Escalera, various responses to those grievances, and Escalera's appeals therefrom; and documents relating to Misconduct No. B742160. *See Docs. 60-1–60-4.*  Escalera also

submitted documents outside the pleadings in connection with his brief in opposition to the motion to dismiss.  He submitted copies of his grievances, grievance appeals, and the DOC's responses to those as well as request slips, correspondence, and a copy of DC-ADM 001, the Inmate Abuse Procedures Manual.[4] *See Doc. 64-1 at 31-59.*

In addition to considering the allegations of the amended complaint, in connection with a 12(b)(6) motion, the court may consider " 'exhibits attached to the complaint and matters of public record.' " *Schmidt*, 770 F.3d at 249 (quoting *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.,* 998 F.2d 1192, 1196 (3d Cir.1993)).  Here, Escalera did not attach any exhibits to the amended complaint.[5]  Although the DOC policies (the current versions at least) may be matters of public record, the rest of the documents submitted by the parties are not. *See McAnulty v. Mooney*, No. 3:13-CV-03104, 2016 WL 26079, at *8 (M.D. Pa. Jan. 4, 2016) (concluding in considering whether a complaint states an Eighth Amendment claim upon which relief can be granted that documents consisting "primarily of Plaintiff's grievances and the prison officials' responses thereto" are not matters of public record).

---

[4]  Escalera also submitted documents that address the merits of his claims rather than the issue of exhaustion, including declarations from several prisoners and prison medical records. *See Doc. 64-1 at 12-30.*

[5]  Although Escalera did not attach any grievance documents to his amended complaint, he had attached grievance documents to his original complaint.

16

"Further, courts may consider exhibits attached to a defendant's motion to dismiss if it is 'an undisputedly authentic document' and 'plaintiff's claims are based on the document.'" *Grp. Against Smog & Pollution, Inc. v. Shenango Inc.*, 810 F.3d 116, 127 (3d Cir. 2016) (quoting *Pension Benefit Guar. Corp.,* 998 F.2d at 1196).  In other words, the court may consider "document[s] *integral to or explicitly relied* upon in the complaint" in connection with a 12(b)(6) motion. *Schmidt*, 770 F.3d at 249 (quoting *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1426 (3d Cir.1997))  "The rationale underlying this exception [to the rule that only the complaint may be considered in connection with a 12(b)(6) motion to dismiss] is that the primary problem raised by looking to documents outside the complaint—lack of notice to the plaintiff—is dissipated '[w]here the plaintiff has actual notice . . . and has relied upon these documents in framing the complaint." *Id.* at 249 (quoting *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d at 1426) (quoting in turn *Watterson v. Page*, 987 F.2d 1, 4 (1st Cir. 1993)). "[W]hat is critical is whether the claims in the complaint are 'based' on an extrinsic document and not merely whether the extrinsic document was explicitly cited." *Id.*

Attorneys for prison officials often contend that claims should be dismissed under Fed.R.Civ.P. 12(b)(6) because the prisoner failed to exhaust administrative remedies.  "These attorneys often cite to *Spruill v. Gillis,* 372 F.3d 218 (3d

17

Cir.2004), for the proposition that grievance records are considered 'indisputably authentic documents' that a court may consider in motion to dismiss without converting the motion into one for summary judgment." *Cooper v. Martucchi*, No. CIV.A. 15-267, 2015 WL 4773450, at *2 (W.D. Pa. Aug. 12, 2015) (footnote omitted).[6] In *Spruill*, 372 F.3d at 228, in connection with a motion to dismiss, the Third Circuit considered grievance documents submitted by the parties without converting the motion into a motion for summary judgment. *Id*.[7] It did so in the context of deciding whether Spruill procedurally defaulted his claims by failing to seek money damages in his grievances and whether he procedurally defaulted his claim against one defendant by failing to name that defendant in the grievances. *Id*. at 232-235. The court stated that "[g]iven that the exhaustion issue turns on the

---

[6] In the instant case, the defendants did not even attempt to show how or why the Court should consider the documents that they attached to their motion to dismiss, and although they cite *Spruill*, they do so only in connection with a general recitation of the exhaustion requirement and for the specific point that a prisoner's failure to comply with the prison grievance system will result in procedural default. *See Doc. 61* at 11.

[7] Although the Third Circuit opinion is not clear in this regard, Judge Vanaskie, the district judge in *Spruill* and the then Chief Judge of this court, noted in his decision on the motion to dismiss, that the defendants attached copies of Spruill's grievances and appeal documents to their motion to dismiss and that Spruill also attached copies of the responses to his grievances to his brief in opposition to the motion to dismiss. *Spruill v. Gillis*, Civil No. 3:CV-01-1625 (M.D. Pa.) (Vanaskie, C.J.) at *Doc. 43* at 8 n.5. Judge Vanaskie also noted that "[b]ecause Spruill himself refers to the grievances in his complaint to show exhaustion, it is proper for me to consider the documents without the necessity to convert the motion into a motion for summary judgment." *Id*.

indisputably authentic documents related to Spruill's grievances, we hold that we may also consider these without converting it to a motion for summary judgment." *Id*. at 223.

As Magistrate Judge Lenihan has observed, in *Spruill* the district court considered the grievance documents attached as exhibits to the defendants' motion to dismiss, without converting the motion to a motion for summary judgment, because Spruill referenced such grievances in his complaint to show exhaustion. *Cooper v. Martucchi*, Civil Action No. 15-267, 2015 WL 4773450 at *2 (W.D. Pa. Aug. 12, 2015). "Although both the district court and the Third Circuit's opinions in *Spruill* seem to suggest that an inmate's actual grievance records are 'indisputably authentic documents,' the Third Circuit has yet to hold, in a published or unpublished opinion, that a district court may consider these documents in support of a defendant's motion to dismiss in a situation other than that presented in *Spruill*, where the plaintiff references the grievances in his complaint to show exhaustion." *Id.* "It is also worth noting that the exhibits attached to the defendants' motion to dismiss in *Spruill* did not include any affidavits or declarations by prison officials attesting to the plaintiff's failure to exhaust, which are often attached to motions to dismiss submitted in this Court, and the Third Circuit has specifically said that '[r]eliance on declarations from prison officials or Corrections Department administrators requires conversion.' "

19

*Id.* at *3 (quoting *Berry v. Klem*, 283 F. App'x 1, 3 (3d Cir.2008)).  And in *Berry*,

"[t]he Third Circuit also stated that "[e]ven if the grievances, appeals, and

responses are indisputably authentic ... the declarations are evidentiary materials

that cannot be considered on a motion to dismiss." *Id.* at *3 (quoting *Berry*, 283 F.

App'x at 4).

    Here, even assuming for the sake of argument that the Court can properly

consider Escalera's grievance records themselves in connection with a motion to

dismiss, the declarations submitted by the defendants are not indisputably authentic

documents[8] on which Escalera's claims are based.  Thus, they cannot be

considered in deciding a 12(b)(6) motion to dismiss. *Berry*, 283 F. App'x at 4; *see*

*also Schmidt*, 770 F.3d at 249 ("The defendants in this case attached several

different kinds of documents to their motions to dismiss.  Some, like the affidavits

attached by the Dipexium defendants, clearly may not be considered at this

stage."); *Breeland v. Baker*, 439 F. App'x 93, 94–95 (3d Cir. 2011) (stating that the

"District Court properly recognized that, in order to consider [the grievance

coordinator]'s verification [stating that the prisoner had failed to exhaust

---

[8]   At least one of the declarations contradicts the other records submitted by the
defendants. *Compare Doc. 60-2* at 3, ¶7 (Declaration of Joseph Dupont) ("Escalera
did not file a final appeal of Misconduct No. B742160  to the Chief Hearing
Examiner's Office.") with *Doc. 60-4* at 2 (Response by Robin M. Lewis, the then
Chief Hearing Examiner, to Escalera's final appeal of Misconduct No. B742160)
("Your appeal of the above-referenced misconduct has been received by this Office
and is accepted for Final Review.").

administrative remedies] along with the other grievance-related documents, the court would have to convert [defendant]'s Rule 12(b)(6) motion into one for summary judgment"); *Gonzalez v. Wentzel*, No. 3:CV-15-184, 2016 WL 727178, at *3–4 (M.D. Pa. Feb. 18, 2016) (Conaboy, J.) ("As recognized in *Berry*, the supporting declaration of Shambaugh submitted by the Commonwealth Defendant is clearly a matter outside of the Complaint and as such is not properly submitted in support of a motion to dismiss.") (footnote omitted); *but see Hampton v. Wetzel,* No. 1:15-CV-898, 2016 WL 1089028, at *5 & *5 n. 2 (M.D. Pa. Mar. 21, 2016) (Conner, C.J.) (considering declaration of a grievance officer in the Secretary's Office of Grievances and Appeals as well as grievance documents on a motion to dismiss without converting the motion to a summary judgment motion).

In sum, we cannot consider in connection with a 12(b)(6) motion to dismiss, the declarations submitted by the defendants.  And the documents that the Court may consider at this point in time (the amended complaint, the DOC policies (at least the current versions), and possibly the grievance documents themselves) are not sufficient to show as a matter of law that Escalera failed to exhaust available administrative remedies.

**D.  The Motion to Dismiss Should Not Be Converted to a Motion for Summary Judgment.**

Fed.R.Civ.P. 12(d) provides that "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56" and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."  Under this provision, if documents outside the pleadings are presented in connection with a 12(b)(6) motion to dismiss, the "Court has discretion to either convert the motion to dismiss into a motion for summary judgment, or to ignore the matters presented outside the pleadings and continue to treat the filing as a motion to dismiss." *Yuratovich v. U.S. Dep't of Justice*, No. CV 13-5651 (NLH), 2015 WL 8328328, at *3 (D.N.J. Dec. 8, 2015).

Here, the Court should decline to convert the motion to dismiss into a motion for summary judgment.  As discussed above, motions to dismiss based on failure to exhaust available administrative remedies are rarely appropriately brought as motions to dismiss under 12(b)(6), and converting such motions into summary judgment motions when the defendants present documents outside the pleadings would serve to perpetuate defendants bringing such motions even when the affirmative defense of failure to exhaust is not clear from the face of the complaint or from documents that the court can consider without converting the motion into a motion for summary judgment.   Converting a motion to dismiss into

22

a motion for summary judgment generally has the effect of needlessly delaying and complicating the case because most prisoners proceed *pro se* and the Court must notify the *pro se* prisoner not only about the fact that it is converting the motion but also about the effect of such conversion. *See Renchenski v. Williams*, 622 F.3d 315 (3d Cir. 2010) (requiring that when a 12(b)(6) motion to dismiss is converted to a summary judgment motion in a *pro se* prisoner case, the prisoner must receive adequate notice of the conversion, which "includes providing a prisoner-plaintiff with a paper copy of the conversion Order, as well as a copy of Rule 56 and a short summary explaining its import that highlights the utility of a Rule [56(d)] affidavit"). The requirement of providing notice—and the delay it entails—could be avoided if the defendants properly frame their motions from the outset. Also when a defendant files a motion to dismiss and attaches documents outside the pleadings, the defendant generally has not framed his or her arguments as summary judgment arguments. Further, the parties generally have not complied with Local Rule 56.1, and, thus, unless the parties are ordered to do so by the Court, the Court does not benefit from the sharpening of the factual disputes that is envisioned by that rule.

Moreover, conversion is particularly inappropriate in this case because the issue here is not merely what administrative remedies Escalera filed or did not file. Rather, Escalera suggests that prison officers hindered him in properly exhausting

his claims, which raises issues about what administrative remedies were available. Such issues cannot necessarily be decided merely by looking at what Escalera filed at the administrative level, and discovery, which has not yet occurred in this case, may be necessary. *See E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.,* 637 F.3d 435, 448 (4th Cir. 2011) (stating that converting a motion to dismiss into a motion for summary judgment "is not appropriate where the parties have not had an opportunity for reasonable discovery"); *Kurdyla v. Pinkerton Sec.*, 197 F.R.D. 128, 131 (D.N.J. 2000) ("A court should not convert a motion . . . when little or no discovery has occurred.").  In fact, Escalera has sought discovery and the defendants sought a stay of discovery.  By a separate order, we granted in part and denied in part the defendants' request for a stay of discovery.  We stayed discovery on the merits, but ordered that the parties complete any discovery relating to the affirmative defense of failure to exhaust available administrative remedies within 60 days.

Further, we note that the defendants have not adequately briefed the exhaustion issues.  In their brief, the defendants set forth the grievances, appeals, and misconduct appeal numbers of the administrative remedies submitted by Escalera and the DOC's responses to such as well as the dates of such filings, and they argue that Escalera is barred from pursing claims based on those filings for a number of reasons.  But nowhere in their brief do the defendants set forth what

Escalera asserted in his administrative filings or which of Escalera's claims relate to which of the administrative filings.  While the defendants do provide copies Escalera's administrative filings, the Court should not have to scour the record in order to match up administrative filings to the specific claims in this case. *Cf. United States v. Dunkel,* 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs.").  The defendants should do that as part of their attempt to meet their burden of showing that Escalera failed to exhaust available administrative remedies.

Accordingly, we recommend that the Court deny the defendants' motion to dismiss.  The defendants may present their failure-to-exhaust defense in connection with a properly supported motion for summary judgment after the 60-day discovery period on exhaustion ends.  Or, in the alternative, the defendants may file a motion requesting a hearing on their exhaustion defense.

## V.  Recommendations.

Accordingly, we recommend that the defendants' motion (doc. 54) to dismiss the amended complaint be denied and that the case be remanded to the undersigned for further proceedings.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof.  Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The briefing requirements set forth in Local Rule 72.2 shall apply.  A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 28th day of September, 2016.


_**S/Susan E. Schwab**_
Susan E. Schwab
United States Magistrate Judge

26